IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LAWRENCE ARNOLD, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>DAVE DORMIRE, ET AL., )<br>)<br>Respondent. ) | Case No. 10-04107-CV-C-NKL |

ORDER DENYING HABEAS PETITION

Petitioner Lawrence Arnold ("Arnold") has filed for habeas corpus relief. Arnold was convicted of kidnapping, attempted escape from confinement, and armed criminal action. His combined sentences, to run consecutively, total life plus 280 years. After a searching examination of the record, the Court concludes that Arnold's grounds for relief lack merit.

**I.    Background**

In December 2005, Arnold was convicted of the class A felonies of attempted escape from confinement and kidnapping, and the unclassified felony of armed criminal action.  He received consecutive sentences of 30 years, 250 years, and life imprisonment.  The Missouri Court of Appeals summarized the facts and procedural history as follows:

During the first part of Officer Field's shift, she and Officer Perkins were working in the booking area of the jail. Defendant and another inmate, John Reynolds ("Reynolds"), asked to do some legal research, and Officer Fields retrieved them from their housing area and brought them down to a holding cell in the booking area that contained a cart with some legal books. While they were locked in the cell doing research, Officer Perkins left to take the elevator up to the observation tower and relieve Officer Freeman, who was working in the tower. After Officer Perkins left, Defendant and Reynolds asked Officer Fields to make some copies for them on the copy machine located in the hallway of the booking area. As Officer Fields unlocked the door to the cell to retrieve the book, the two inmates rushed the door, and Reynolds grabbed Officer Fields around the neck and forcefully pushed a sharp object to her neck underneath her jaw bone. Defendant told Reynolds to "go ahead and kill [her]." Reynolds whispered in Officer Fields' ear that if she did everything Defendant said, she would not be hurt.

Just after Officer Perkins arrived in the tower to relieve Officer Freeman, Officer Freemen [sic] looked at the tower's monitors and saw that Defendant had entered the booking area, where he was not supposed to be. Officer Freeman immediately told Officer Perkins to contact dispatch for back-up, and took the elevator down. When the elevator doors opened, Officer Freeman saw Defendant running toward him with Officer Fields' duty belt in hand. Defendant and Officer Freeman shoved each other into the booking area, where Officer Freeman saw Reynolds holding Officer Fields around the neck from behind with an ink pen to her throat. At that point, both Defendant and Reynolds beat and kicked Officer Freeman to the floor until he was unconscious.

Defendant then handcuffed one of Officer Fields' arms and grabbed the other end of the handcuffs, pulling her down the hallway toward the door that opens into the deputies' room. That room leads to an electronically secured door which accesses the outside of the jail. Officer Risen was in the deputies' room when he saw Defendant open the door and enter with Officer Fields in front of him, holding her around the neck with a ball-point pen to her throat. Officer Risen, with his gun drawn, but pointed away from Defendant and Officer Fields, told Defendant he could not leave and needed to put the pen down, but Defendant responded that unless Officer Risen allowed him to leave, "he was going to kill her." Officer Risen again told Defendant he could not let him leave, and Defendant said that he needed to be released or else he would kill some-

one. When Officer Risen refused for a third time to let him leave, Defendant retreated back through the door, pulling Officer Fields with him.

Defendant proceeded to run from one end of the hallway to the other and back again numerous times, pulling Officer Fields along with him and negotiating with people at the doors on either end. He ordered Officer Fields to tell the negotiators that he had a gun, and she complied. Meanwhile, Reynolds gave up and locked himself in a holding cell. Defendant and Reynolds were eventually taken back into custody, about three hours after they initially accosted and apprehended Officer Fields.

At the close of the State's evidence, Defendant filed a motion for judgment of acquittal. The trial court denied the motion.

The defense case was presented via the testimony of three witnesses. For purposes of this appeal, the relevant testimony was provided by Defendant.

Defendant testified that although Reynolds had been talking for a few days about escaping by going down to do legal research and taking Officer Fields hostage, he did not know Reynolds was planning on doing it this particular time they went to research. Reynolds was the one who rushed the door and grabbed Officer Fields, and Defendant did not come out of the cell immediately. When he did come out, he walked down the hall and met up with Officer Freeman, who swung at him and tried to mace him. They got into a fist fight, and Defendant told Officer Freeman to stay down on the floor and quit fighting. He never held Officer Fields hostage or told anyone he would kill her, or held a pen to her throat; only Reynolds did that. But Defendant admitted that he began negotiating with officers "[p]retty much immediately," that he held onto Officer Fields and stood her in front of him as he tried to enter the deputies' room, and that he placed her in handcuffs.

At the close of all the evidence, Defendant filed another motion for judgment of acquittal. The trial court also denied that motion. After Defendant was convicted, he appealed.

*State v. Arnold*, 216 S.W.3d 203, 205-206 (Mo. Ct. App. 2007) (footnote omitted).

On March 5, 2007 the Missouri Court of Appeals denied Arnold's direct appeal and affirmed his convictions. *Id*. at 210. Arnold did not file an application for transfer to the Missouri Supreme Court.

3

On May 30, 2007, Arnold filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. Counsel was appointed and Arnold filed an amended Rule 29.15 motion. On June 16, 2008, the circuit court denied Arnold's Rule 29.15 motion, and Arnold filed an appeal with the Missouri Court of Appeals. By an order dated August 10, 2009, the Court of Appeals denied Arnold's appeal. *Arnold v. State*, 303 S.W.3d 567 (Mo. Ct. App. 2009).

On May 16, 2010, Arnold filed a Petition for writ of habeas corpus in this Court, asserting thirteen grounds for relief. Respondent does not contest that Arnold has properly exhausted his state law remedies. [Doc. #7.] *See also Williams v. Roper*, 2005 ("[A] state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court.") (citing *Randolph v. Kemna*, 276 F.3d, 401, 405 (8th Cir. 2002)).

## II.  Legal Standard

State prisoners who believe that they are incarcerated "in violation of the Constitution or laws or treaties of the United States," § 2254(a), may file petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2254. Before doing so, petitioners must exhaust their state remedies. *See Coleman v. Thompson*, 501 U.S. 722, 732, *reh'g denied*, 501 U.S. 1277 (1992).

Section 2254 has been amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132 (April 24, 1996). Under

4

AEDPA, a federal court must defer to a state court's resolution of a petitioner's fact-dependent claims unless it is shown that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to clearly established federal law" if it significantly misstates an applicable rule from a Supreme Court case or reaches a conclusion different than the Supreme Court in a case involving materially identical facts. *Williams v. Taylor*, 120 S. Ct. 1495, 1519-20 (2000) (O'Connor, J. concurring). A state court decision is an "unreasonable application of clearly established federal law" if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 1520. The reasonableness of a decision is to be judged by an objective standard, rather than by reference to a hypothetical reasonable jurist. *Id.* at 1521 (*overruling Drinkard v. Johnson*, 97 F.3d 751, 769 (1996), *cert. denied*, 520 U.S. 1107 (1997)).

III. **Arnold's Claim That He Was Denied His Right to Due Process Because He Was Convicted of Offenses That Required Use of a Dangerous Instrument When the Evidence Was Legally Insufficient to Show That the Alleged Instrument Was a Dangerous Instrument under Missouri Law**

Arnold claims that he is entitled to habeas corpus relief because the evidence was legally insufficient to show that an ink pen is a dangerous instrument under Missouri

5

Law. Both crimes of armed criminal action and attempted escape require that a person employ a dangerous instrument. *See* Mo. Rev. Stat. Section 571.015 (1) (armed criminal action must be committed by a person "by, with, or through the use, assistance, or aid of a dangerous instrument"); Mo. Rev. Stat. Section 575.210 (1) (a person commits the class A felony of escape or attempted escape "if [the escape] is effected or attempted by means of a . . . dangerous instrument or by holding any person as hostage"). A "dangerous instrument" means "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Mo. Rev. Stat. 556.061 (9). "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Mo. Rev. Stat. 556.061 (28). Arnold argues that the evidence did not show beyond a reasonable doubt that the pen was a "dangerous instrument" because "[n]o evidence was presented that the pen, in fact, was capable of causing serious injury," [Doc. # 3, at 9], or actually caused serious physical injury. [Doc. #10, at 11].

Arnold argues that in order for an innocuous object to be deemed "readily capable of causing death or other serious physical injury, it must have actually caused an injury. [Doc. #10, at 10]. Missouri courts have never read this requirement into the law. *See Martin v. State*, 187 S.W.3d 335, 341 (Mo. Ct. App. 2006) (holding that defendant's use of a steak knife, which is not a deadly weapon, in a threatening manner

6

by holding it to the victim's throat was sufficient to show that it constituted a dangerous instrument). Arnold is effectively asking the Court to reinterpret a Missouri statute, but that is prohibited under habeas law. *See*, *Steinbruegge v. Dormire*, No. 4:09CV1210MLM, 2010 U.S. Dist. LEXIS 62303, at *62 (E.D. Mo. June 23, 2010) (citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Higgins v. Smith*, 991 F.2d 440, 442 (8th Cir. 1993); *Jones v. Armontrout*, 953 F.2d 404, 405 (8th Cir. 1992)). Instead, this Court is obligated to apply Missouri courts' interpretation of the definition of a "dangerous instrument."

"Missouri courts have repeatedly held that a seemingly innocuous item may constitute a dangerous instrument by considering the circumstances under which the object is used." *State v. Williams*, 126 S.W.3d 377 (Mo. 2004). "In these cases, the standard for determining whether an ordinary object constituted a dangerous instrument turned on whether the defendant knowingly used the object in a manner in which it was readily capable of causing death or serious physical injury." *Id*. Thus, the characterization of an innocuous object as a dangerous instrument depends on the "manner in which it is used" by the alleged perpetrator, and not on some inherent "capabilities" of the object. It is the "threat to use the object to produce harm [that] transform[s] it into a dangerous instrument." *State v. Tankins*, 865 S.W.2d 848 (Mo. Ct. App. 1993) (citation omitted).

Here, evidence indicates that Arnold told Reynolds to "go ahead and kill [her]" when Reynolds grabbed Officer Fields around the neck and forcefully pushed a sharp object–a ball point pen–underneath her jawbone, and that Arnold also held the pen to Officer Fields's throat and directly threatened to kill her if Officer Risen did not allow him to leave. *State v. Arnold*, 216 S.W.3d at 205, 206. The jury had been presented evidence regarding the nature and type of the object–a "clear stick pen . . . [l]ike a Bic" and a "ball point pen"–and how the object was used in the circumstances. [Resp. Ex. D, at 147]. Arnold agreed with the accuracy of the description of the pen. [Resp. Ex. D, at 225]. The jury was also specifically instructed, "Unless you find and believe from the evidence beyond a reasonable doubt that the attempt to commit escape was effected by means of a dangerous instrument, you must find the defendant not guilty under Count 5 of the class A felony of attempted escape from confinement . . . ." [Instruction #10, Resp. Ex. C, at 55]. A similar instruction was given regarding armed criminal action. [Instruction #21, Resp. Ex. C, at 69].

The evidence is sufficient to support that the jury was instructed to find, and did so find, beyond a reasonable doubt that Arnold employed a "dangerous instrument" in the commission of his crimes by knowingly using a pen to threaten death or serious physical injury. The decision of the Missouri Court of Appeals that a jury could find that a pen was a dangerous instrument as used here, did not involve an unreasonable

application of federal law or an unreasonable determination of the facts. This ground for relief is denied.

IV. **Arnold's Claim That He Was Denied His Right to Due Process Because He Was Convicted of the Offense of Class A Kidnapping When There Was No Evidence That He Used Officer Fields as a Bargaining Tool to Obtain Release**

Arnold makes only a bare assertion that the trial evidence was insufficient to show that he used Officer Fields as a hostage. [Doc. #3, at 10]. One of the elements of a kidnapping charge is that the defendant confined the victim for the purpose of using her as a shield or hostage. Mo. Rev. Stat. § 565.110.1 (2); [Instruction #12, Resp. Ex. C., at 58]. Arnold states that there was "no evidence that [he] used Ms. Fields as a bargaining tool to obtain release," id. However, the jury was presented with evidence that Arnold ordered Deputy Risen to let Arnold leave "or else he was going to . . . kill [Officer Fields]." [Resp. Ex. D, at 185, 189]. Additionally, evidence showed that Arnold confined Officer Fields with handcuffs, [Resp. Ex. D, at 101, 115], and that Arnold kept Officer Fields in front of him, like a shield, as they approached Deputy Risen. [Resp. Ex. D, at 103]. In discussing Arnold's direct appeal, the Missouri Court of Appeals found that "there was sufficient evidence for the jury to find beyond a reasonable doubt that [Arnold] confined Officer Fields for the purpose of holding her as a hostage." *State v. Arnold*, 216 S.W.3d, at 210. Arnold's bare assertion that the evidence was insufficient fails to show that the Missouri Court of Appeals' decision on

9

this issue involved an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief is denied.

## V. Arnold's Claim That He Was Denied Effective Assistance of Trial Counsel Because Trial Counsel Failed to Request an Instruction for False Imprisonment as a Lesser-Included Offense to Class A Kidnapping

Arnold claims that he was denied effective assistance of trial counsel because his trial counsel failed to request an instruction for false imprisonment as a lesser-included offense to kidnapping. At trial, only an instruction for kidnapping, and not false imprisonment, was given. For Arnold to prevail on his claim that he was denied his Sixth Amendment right to effective assistance of trial counsel, he must first establish that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 693 (1984).

Arnold's trial counsel did not act unreasonably by failing to request an instruction for false imprisonment. First, assuming that false imprisonment is a lesser-included offense of kidnapping, the Missouri Court of Appeals already determined that state law did not entitle Arnold to an instruction on false imprisonment. *Arnold v. State*, 303 S.W.3d at 569. That determination is binding on this Court. *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).

Second, Arnold's trial counsel's failure to request an instruction for false imprisonment is not contrary to a clearly established constitutional right. The United States Supreme Court "has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007).

Third, Missouri courts have already established the appropriate standard that requires attorneys to request instructions in circumstances similar to Arnold's: "[W]e will not deem trial counsel ineffective for failing to request a jury instruction to which a defendant is not entitled." *Becker v. State*, 260 S.W.3d 905, 912 (Mo. Ct. App. 2008) (analyzing defendant's entitlement to a lesser-included offense jury instruction according to Missouri law). Because the Missouri Court of Appeals determined that Arnold was not entitled to the instruction under state law, trial counsel's failure to request the instruction does not fall below an "objective standard of reasonableness."

Therefore, this claim for habeas relief is denied.

## VI. Availability of Review for Arnold's Claims Numbered Four through Thirteen

Arnold's remaining claims allege various instances of ineffective assistance of trial counsel. [Doc. #3, 13-28]. He did not raise these claims in either his direct appeal or in his post-conviction appeal. [Doc. #3, 13-28]. Arnold argues that his claims should not be procedurally barred from federal habeas review for failure to present these

claims in the Missouri Court of Appeals because of the "systemic failure of the public defender system to provide statutorily mandated representation." [Doc. # 10, at 20]. For the following reasons, the Court denies Arnold's remaining grounds because they are procedurally barred from federal habeas review.

In reviewing a petition under 28 U.S.C. § 2254, this Court "may consider only those claims . . . [for which] the petitioner has . . . preserved his claims for federal habeas corpus review by complying with state procedural rules governing their presentation." *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoting *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir. 1988), *cert. denied*, 490 U.S. 1114 (1989)). Missouri procedural rules require that a "claim be presented at each step of the judicial process in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (internal quotation omitted). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Id.* (citing *Gilmore*, 861 F.2d at 1065).

Clearly, were the inquiry to end here, Arnold's remaining claims would be procedurally barred because of his failure to raise them in a Missouri appellate court. However, procedural default can be excused by demonstrated "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The 'cause' inquiry . . . turns on events or

circumstances 'external to the defense.'" *Banks v. Dretke*, 540 U.S. 668, 696 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Arnold argues that his post-conviction counsel was "woefully overworked and unable to handle the post-conviction process adequately." [Doc. #10, at 17]. He cites to statistics indicating that the average caseload for an attorney in the same position as Arnold's counsel was significantly higher than a caseload of 40 appellate cases, which was recommended by a 2005 report contracted for by the Missouri State Bar Association. [Doc. #10, at 19]. He imputes the "impossible situation in which the Missouri Public Defender System has been placed because of the Missouri Legislature's refusal either to narrow its mission [of providing post-conviction counsel] or fund it adequately" to a lack of time and resources available to Arnold's counsel, which hindered his "ability to do Mr. Arnold's case justice." [Doc. #10, at 20]. According to Arnold, this is evidenced by the fact that his post-conviction counsel raised only one ground for relief on appeal from the denial of post-conviction relief although his initial motion contained forty-one grounds. [Resp. Ex. F, at 2-19]. However, ineffectiveness of post-conviction counsel does not excuse a procedural default. *Taylor v. Bowersox*, 329 F.3d 963, 971 n.13 (8th Cir. 2003) (citing *Chambers v. Bowersox*, 157 F.3d 560, 566 n.6 (8th Cir. 1998) ("Errors made by [post-conviction] counsel are not actionable as cause to excuse procedural defaults for habeas purposes." id.) *Clemmons v. Delo*, 124 F.3d 944, 947 (8th Cir. 1997) (omission on appeal of an issue by post-conviction counsel

13

cannot be "cause" to excuse a procedural default)). Because Arnold fails to demonstrate cause for his procedural default, claims four through thirteen cannot be reviewed in habeas.

**V.     Conclusion**

For the foregoing reasons, Petitioner's Writ of Habeas Corpus fails. Accordingly, it is hereby

ORDERED that all grounds in the Petition are DENIED.


                                                  s/ NANETTE K. LAUGHREY
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: October 12, 2010
Jefferson City, Missouri